IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,        )
                                 )
                    Plaintiff,   )
                                 )
vs.                              )        Case No. CR-11-171-C
                                 )
COURTNEY SUTMILLER,              )
                                 )
                    Defendant.   )

MEMORANDUM OPINION AND ORDER

On April 28, 2011, while driving across Interstate 40 in Canadian County, Defendant
Courtney Sutmiller was stopped by Lieutenant Jason Glass of the Canadian County Sheriff's
Office for making an unsafe lane change. Lieutenant Glass approached Defendant's car,
informed him of the reasons for the traffic stop, and asked Defendant to accompany him to
his patrol car. Defendant acknowledged the unsafe lane change, and explained to Lieutenant
Glass that he was traveling from Ohio to Arizona with two passengers. Defendant's vehicle
was a rental car and he was not listed as a permitted driver on the rental agreement, but
Defendant informed Lieutenant Glass that the person who rented the vehicle had contacted
the rental agency and both extended the time and added Defendant as an authorized driver.

Lieutenant Glass ran a routine check for criminal warrants on Defendant and both
passengers. Dispatch advised Lieutenant Glass that Defendant had a valid driver's license
and was clear of any criminal warrants. However, Unik and Simonski claimed to have lost
their driver's licenses in Ohio, and due to a misunderstanding of the correct spelling of

Unik's last name, dispatch was unable to find any record of Unik. After the misspelling was clarified, dispatch reported that Unik and Simonski were also clear of criminal warrants.

At this point, Lieutenant Glass issued Defendant a warning for the unsafe lane change, and informed Defendant that he was free to go. As Defendant started to exit the patrol car, Lieutenant Glass asked him if there were any drugs, guns, or large sums of money in the car, and Defendant replied, "No." Lieutenant Glass then asked for permission to search the car, and Defendant replied, "If you need to, I mean we're in a hurry." Lieutenant Glass stated that he needed a "yes" or "no" answer, and Defendant said, "no." Lieutenant Glass asked Defendant if he could walk a drug dog around the car, to which Defendant replied, "Sure." Lieutenant Glass proceeded to walk the dog around the car twice, and the dog alerted to the trunk of Defendant's car on both passes. Lieutenant Glass once again asked Defendant if any narcotics were in the car, and Defendant replied, "There shouldn't be anything in there."

After Lieutenant Glass's dog alerted to the presence of narcotics in Defendant's vehicle, Canadian County Sheriff's Officer Sergeant Vaught arrived on the scene to assist in a search of Defendant's car. A search of the vehicle revealed a backpack that contained an empty pill bottle with a strong odor of marijuana, a package of rolling papers, and a bag containing U.S. currency. Additionally, Sergeant Vaught discovered a second bag in the trunk that contained additional U.S. currency. In total, $52,680 in currency was discovered in the trunk. At this point, Defendant, Unik, and Simonski were detained and taken to the Canadian County Sherriff's garage to meet with Immigration and Customs Enforcement ("ICE") agents. ICE agent Travis Gentry read Defendant his Miranda rights, and Defendant

stated that he understood his rights and signed a Miranda waiver. During questioning, Defendant admitted that the money was not his but was the proceeds of sale of marijuana. Defendant was placed under arrest and booked on federal drug charges. After further investigation, it was discovered that Defendant's statements about the status of the rental car were false, and Defendant had not been made an authorized driver pursuant to the rental agreement.

Defendant filed the present motion to suppress, arguing that the arrest and search were illegal and that statements and evidence were obtained in violation of the Fourth and Fifth Amendments. The Government contends that Defendant lacks standing to challenge both the initial detention and later search of the vehicle. Further, the Government contends that the initial detention and search were valid, did not violate the Fourth or Fifth Amendments, and suppression of the statements made to ICE agents and evidence obtained during the search is not warranted. The Court recently heard testimony regarding this motion during a suppression hearing.

In order to challenge the legality of a search or seizure, a defendant must have standing to do so. United States v. Edwards, 632 F.3d 633, 642 (10th Cir. 2001). "Fourth Amendment rights are personal, however, and may not be asserted vicariously. . . . A district court may not suppress evidence unless the defendant has met his burden of proving that he had a personal Fourth Amendment interest that was implicated by the search." United States v. Rascon, 922 F.2d 584, 586 (10th Cir. 1990). Here, Defendant, as an unauthorized driver of the vehicle pursuant to the rental agreement, lacks standing to challenge the search of the

rental vehicle.  United States v. Jones, 44 F.3d 860, 871 (10th Cir. 1995) ("[A] defendant in sole possession and control of a car rented by a third party has no standing to challenge a search or seizure of the car.").

Defendant cites to an unpublished Tenth Circuit opinion for the proposition that being given permission to drive the car by the person who rented it would give Defendant the necessary expectation of privacy to gain standing to challenge a search of the car.  United States v. Mitchell, 106 F. App'x 5 (10th Cir. 2004).  In Mitchell, the Tenth Circuit stated that:

> Although Mitchell was driving the car at the time it was stopped, he was not the person who had rented the car, nor is there any indication he was given permission to drive the car by the person who had rented it (Nichols' Aunt), nor was he an authorized driver according to the terms of the rental agreement.

Id. at 7.  However, as an unpublished opinion, this case is not binding precedent.  The Court looks instead to United States v. Obregon, 748 F.2d 1371 (10th Cir. 1984), where the Tenth Circuit upheld the district court's finding that:

> "Defendant had the keys to the car and may have had permission from the renter of the car to use it, but this is not determinative of the standing inquiry in this case.  Defendant was driving a rented vehicle and was not named on the rental agreement or any other documents, either as the renter or as an authorized driver.  Defendant made no showing that any arrangement had been made with the rental car company that would have allowed him to drive the car legitimately . . . Defendant's relationship to the rented car is too attenuated to support a claim of standing."

Id. at 1374.  Likewise, Defendant Sutmiller may have had permission to drive the car from the car's renter, but he had not rented the car and was not authorized to drive the car on the rental agreement.  Therefore, Defendant lacks standing to challenge the validity of the

subsequent search of the car. However, Defendant does have standing to challenge the validity of his detention. United States v. Nava-Ramirez, 210 F.3d 1128, 1131 (10th Cir. 2000). Even if Defendant Sutmiller has standing to challenge the search, it is valid on the merits, as is the initial traffic stop and detention.

Routine traffic stops are considered seizures within the meaning of the Fourth Amendment and must be analyzed under the principles set forth in Terry v. Ohio, 392 U.S. 1 (1968). "[A] traffic stop is reasonable if (1) the officer's action was justified at its inception, and (2) the officer's action was reasonably related in scope to the circumstances which justified the interference in the first place." United States v. DeGasso, 369 F.3d 1139, 1143 (10th Cir. 2004). "To determine the initial validity of a traffic stop, we ask whether the stop was 'objectively justified.' [United States v.] Botero-Ospina, 71 F.3d [783,] 788 [(10th Cir. 1995)]. Generally, a routine stop is objectively justified when probable cause or reasonable articulable suspicion exists to believe a traffic violation has occurred." Id.

Even if the initial stop was justified, the officer's subsequent actions must be reasonably related in scope to the circumstances which led the officer to make the stop in the first place. DeGasso, 369 F.3d at 1143. The Supreme Court has held that "a seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution. A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." Illinois v. Caballes, 543 U.S. 405, 407 (2005) (citation omitted).

In this case, the stop and detention of Defendant Sutmiller were reasonable. Lieutenant Glass stopped Defendant's vehicle for a traffic violation, which Defendant admits occurred. Therefore, any subjective intent on the part of Lieutenant Glass is irrelevant to the validity of the stop. City of Indianapolis v. Edmond, 531 U.S. 32, 45 (2000).

The detention of Defendant after the initial traffic stop lasted over 30 minutes. The Supreme Court has declined to adopt a maximum time for conducting a "reasonable" seizure. United States v. Place, 462 U.S. 696, 709 (1983). During a routine traffic stop, an officer has the authority to run a computer check for outstanding warrants on the occupants of a vehicle. See United States v. Rosborough, 366 F.3d 1145, 1148 (10th Cir. 2004). While there was some delay caused by the miscommunication between the passengers and the Lieutenant, this process lasted "no longer than [was] necessary to effectuate the purpose of the stop." Florida v. Royer, 460 U.S. 491, 500 (1983).

Additionally, Defendant complains that the questioning by Lieutenant Glass as Defendant was exiting the patrol car unlawfully detained him beyond what was necessary. This argument is not persuasive: Defendant was exiting the patrol car to return to his car while this exchange occurred. He subsequently consented to the dog sniff, which indicates that he felt free to leave. See United States v. Davis, 636 F.3d 1281, 1290 (10th Cir. 2011). Therefore, the stop was not unreasonably prolonged beyond the time reasonably required to complete the mission of conducting a check for warrants, nor did Lieutenant Glass unlawfully detain Defendant by further questioning him after returning his documents.

The search of Defendant's vehicle was also valid. Once Defendant consented to the dog sniff, the encounter became consensual. The Tenth Circuit looks at the totality of the circumstances and whether or not the driver has a reasonable basis to believe he is free to go to determine if an encounter was, in fact, consensual. United States v. Chavira, 467 F.3d 1286, 1290-91 (10th Cir. 2006). To become a consensual encounter, the officer must return the driver's license and registration, and refrain from using an "overbearing show of authority." Id. Lieutenant Glass returned Defendant's license and registration and did not use an overbearing show of authority. Defendant was told he was free to go and was asked for permission to conduct the dog sniff test, which Defendant granted. The Court finds the dog's alert to the trunk was proper and not coerced. Accordingly, probable cause existed for the search of Defendant's car. United States v. Villa, 589 F.3d 1334, 1341 (10th Cir. 2009), cert. denied, ___ U.S. ___, 131 S.Ct. 636 (2010) ("[I]t is well-established that a dog sniff provides the requisite probable cause to search a vehicle for drugs.").

While Lieutenant Glass and Sergeant Vaught were conducting a search of Defendant's car, Defendant made statements in the back of Lieutenant Glass's car that, unbeknownst to Defendant, were recorded. Defendant argues that this recording was in violation of the Oklahoma Security of Communications Act, 13 Okla. Stat. § 176.3-.6, and should therefore be suppressed. However, under United States v. Turner, 209 F.3d 1198 (10th Cir. 2000), state law does not govern whether such evidence is admissible. Id. at 1199 n.1, 1201.

Even if state law did govern, the Oklahoma statute's prohibition of intercepting oral communications applies only if the communication is uttered by a person who has a

reasonable expectation that under the circumstances the communication is not subject to interception. 13 Okla. Stat. § 176.2 ("'Oral communication' means any communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstance justifying such expectation."). The Tenth Circuit has specifically stated that a person has no expectation of privacy in the back of a police car, and the electronic noises and microphones present in a police car should put the occupants on notice that their conversations could be recorded. Turner, 209 F.3d at 1201. Because Defendant lacked this expectation, the Oklahoma Security of Communications Act would not prohibit recording of Defendant's conversations while in the patrol car, even if it governed.

Defendant also argues that statements made by him to ICE Agent Terry should be suppressed because he alleges that he invoked his right to counsel after signing a waiver. Defendant was read his Miranda rights in English, confirmed that he understood them, and voluntarily waived his right to counsel by signing the waiver. The Court finds that the Government has met its burden of establishing by a preponderance of the evidence that the Miranda waiver was voluntary: considering the totality of the circumstances, the waiver was not a product of intimidation, coercion, or deception, and the waiver was made with full awareness of the nature of the right being waived and the consequences thereof. United States v. Roman-Zarate, 115 F.3d 778, 782 (10th Cir. 1997). There is no evidence Defendant ever invoked his right to counsel.

For the reasons set forth herein, Defendant's Motion Suppress (Dkt. No. 17) is DENIED.

IT IS SO ORDERED this 6th day of July, 2011.

ROBIN J. CAUTHRON
United States District Judge